UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PARCELLS PLASTIC SURGERY, LLC<br><br>Plaintiff,<br><br>-against-<br><br>OXFORD HEALTH PLANS, LLC,<br><br>Defendant. | Civil Action No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Parcells Plastic Surgery, LLC ("Plaintiff"), by and through his attorneys, Gottlieb & Greenspan, LLC, by way of Complaint against Defendant Oxford Health Plans, LLC ("Defendant"), alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff is a New Jersey medical practitioner registered to do business in the State of New Jersey with a principal place of business at 655 Shrewsbury Avenue, Suite 207, Shrewsbury, New Jersey.

2. Upon information and belief, Defendant is engaged in providing and/or administering health care plans or policies in the state of New Jersey, thus this Court may properly maintain personal jurisdiction over Defendant.

3. This Court possesses jurisdiction over this matter pursuant to 28 U.S.C. § 1441, as the amount in controversy exceeds the threshold amount and the parties have complete diversity of citizenship.

4. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2), as the parties have sufficient contacts in this judicial district and a substantial part of the events and/or omissions giving rise to this action occurred in this judicial district.

**FACTUAL BACKGROUND**

5. Plaintiff is a medical provider specializing in plastic and reconstructive surgery.

6. Upon information and belief, Defendant is engaged in providing and/or administering health care plans and/or policies in the State of New Jersey.

7. On or about August 12, 2021, Alexis Parcells, M.D. ("Dr. Parcells"), a surgeon who is a member of Plaintiff, performed a highly invasive and complex surgical procedure known as bilateral mastectomies and placement of tissue expanders (the "August 12 Procedure") on a breast cancer patient with the initials E.S. ("Patient") at Monmouth Medical Center, a hospital located in Long Branch, New Jersey.

8. On or about November 16, 2021, Dr. Parcells, performed another highly invasive and complex surgical procedure involving bilateral second-stage reconstruction with removal of tissue expanders, total capsulectomies, replacement of silicone gel implants, mastectomies, mastopexies as well as placement of acellular dermal matrix and intercostal block (the "November 16 Procedure" and together with the August 12 Procedure (the "Procedures")) on the Patient at Monmouth Medical Center, a hospital located in Long Branch, New Jersey.

9. At the time of the Procedures, Patient was the beneficiary of a health insurance plan ("Plan") administered by Defendant.

10. Both Plaintiff and Dr. Parcells are out-of-network with Defendant and do not have network contracts with Defendant that would determine payment for the treatment of Defendant's beneficiaries.

11. Therefore, there is no pre-determined contractual rate or contract between the parties that would govern reimbursement for the Procedures.

12. As out-of-network providers, Plaintiff and Dr. Parcells are entitled to set their own

fees and bill patients accordingly.

13. As there were no other providers in the geographic area available to perform the medical treatment Patient required, Plaintiff and Dr. Parcells sought to obtain in-network/gap exceptions ("Gap Exception") for the Procedures.

14. A Gap Exception, also known as an "in-network" exception, is a healthcare industry term of art whereby the insurance carrier agrees to extend coverage for out-of-network medical treatment in a manner that exposes its member to no greater cost-sharing than if the member underwent the subject treatment with an in-network provider.

15. A Gap Exception does not mean that a provider has agreed to accept the same reimbursement rates or policies that are outlined, nor does it mean that the provider has accepted the rates that in-network providers receive for the same service.

16. Accordingly, Gap Exceptions neither rely upon reimbursement calculations established by a member's health care plan nor refer to the terms of the member's health care plan when they are formed.

17. It is, therefore, an industry custom that, where a Gap Exception is authorized by an insurer, the reimbursement rate for that treatment is either negotiated between the parties or paid as charged by the out-of-network provider.

18. On August 12, 2021, Plaintiff was granted a Gap Exception under authorization number A131326916. (*See* **Exhibit A**, attached hereto).

19. The August 12, 2021 Gap Exception approval "(Approval)" did not place limitations or qualifications on Plaintiff's reimbursement rate or mentioned specific Plan terms.

20. The Approval states in relevant part, "We received a request to cover health care services. After review of the information submitted, and your plan documents, it was determined

that the treatment is medically necessary and covered by your plan." *Id.*

21. Thus, pursuant to the Gap Exception that Defendant granted to Plaintiff, Defendant was obligated to reimburse Plaintiff at the billed charges or, alternatively, at an agreed upon negotiated rate independent of the Plan or its terms.

22. Indeed, Plaintiff relied on Defendant's Approval in furnishing the Procedures to Defendant's beneficiary.

23. After treating Patient, Plaintiff submitted Health Insurance Claim Forms ("HCFA") to Defendant for the Procedures seeking total payment in the amount of $127,800.00. (*See* **Exhibits B** and **C,** attached hereto).

24. In response to the claims, Defendant only allowed payments of $5,048.86 to Plaintiff. (*See* Explanations of Benefits ("EOBs") **Exhibits D** and **E,** attached hereto).

25. Plaintiff's office submitted multiple internal appeals challenging Defendant's reimbursement as inconsistent with the Gap Exception that Defendant granted.

26. However, Defendant failed to issue any additional reimbursement.

27. On August 18, 2021, Data iSight, a third-party repricer, offered Plaintiff an additional payment of $8,000.65 (*See* **Exhibit F**, attached hereto).

28. Plaintiff did not accept Data iSight's offer of additional payment.

29. Pursuant to the Gap Exception, Defendant had an obligation to process Plaintiff's claims in a manner that would expose Patient to no greater cost-sharing than if the treatment was performed by in-network providers.

30. However, the Gap Exception did not provide that Plaintiff agreed to accept in-network, out-of-network, or any other reimbursement rates derived from the Patient's Plan in exchange for performing the Procedures.

31. To comply with the Gap Exception that Defendant granted, Defendant was obligated to either pay the billed charges or negotiate agreeable rates with Plaintiff.

32. Defendant failed to pay or negotiate the reimbursement rate for Plaintiff's charges and applied a unilateral payment amount of $5,048.86 for both Procedures.

33. Moreover, Defendant represented in the EOBs that Patient was not responsible for the unpaid portion of the charges beyond the Patient's deductible, copay and coinsurance. In doing so, Defendant created the false impression that it complied with the Gap Exception, as it represented Patient's liability to be $0.00.

34. However, Defendant did not comply with the Gap Exception agreement with Plaintiff and left Patient exposed to the unpaid portion of Plaintiffs' charges.

35. As a result, Plaintiff has been damaged in the amount of $122,751.14.

36. Alternatively, Plaintiff is entitled to an amount it would have accepted during the negotiation phase of the Gap Exception process.

37. Accordingly, Plaintiff brings this action for recovery of the outstanding balance.

## COUNT ONE

## PROMISSORY ESTOPPEL

38. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 37 of the Complaint as though fully set forth herein.

39. Defendant made a clear and definite promise that a Gap Exception was granted for the Procedures.

40. The Approval contained no qualifiers or restrictions concerning reimbursement rates.

41. The promise, according to not only industry customs, but also Defendant's own

practice called for either negotiation of an agreeable rate or payment of the services as charged.

42. After granting the Gap Exception, Defendant expected and understood that this promise would be relied upon by Plaintiff.

43. Based on the Approval, Plaintiff reasonably relied upon Defendant's promise and, as a result, performed the Procedures on Patient.

44. Defendant then disregarded its promise to Plaintiff to either pay the charged rate or negotiate the reimbursement rate for Patient's Procedures.

45. As a result, Defendant's failure to satisfy the promise caused Plaintiff damages in the amount of $122,751.14.

46. Plaintiff's reliance on Defendant's promise caused Plaintiff a definite and substantial detriment, as it performed the serious, consequential, and complicated Procedures on Patient without adequate reimbursement.

47. As a result, Plaintiff has suffered damages and continues to suffer damages in the operation of his medical practice.

## **CLAIM FOR RELIEF**

**WHEREFORE,** Plaintiff demands judgment against Defendant as follows:

A.    For an Order directing Defendant to pay Plaintiff $122,751.14;

B.    For compensatory damages and interest;

C.    For attorney's fees and costs of suit; and

D.    For such other and further relief as the Court may deem just and equitable.

Dated: June 18, 2025

**GOTTLIEB & GREENSPAN, LLC**
*Attorneys for Plaintiff*

By:    /s/ Debra A. Clifford
Debra A. Clifford
17-17 Route 208, Suite 250
Fair Lawn, New Jersey 07410
Tel: (201) 644-0992
dclifford@gottliebandgreenspan.com