NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

PARCELLS PLASTIC SURGERY, LLC,

　　　　　Plaintiff,

　　v.

OXFORD HEALTH PLANS, LLC,

　　　　　Defendant.

Civil Action No. 25-11928 (ZNQ) (JTQ)

OPINION

QURAISHI, District Judge

THIS MATTER comes before the Court upon a Motion to Dismiss filed by Defendant Oxford Health Plans, LLC ("Defendant") on October 24, 2025.  (ECF No. 17.)  Defendant filed a Memorandum of Law in Support of its Motion.  ("Moving Br.," ECF No. 17-1.)  Plaintiff Parcells Plastic Surgery, LCC ("Plaintiff") filed an Opposition Brief on December 3, 2025 ("Opp.," ECF No. 21), to which Defendant filed a Reply Brief on December 29, 2025 ("Reply," ECF No. 26).

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **GRANT** Defendant's Motion.

I.　　**BACKGROUND AND PROCEDURAL HISTORY**

This dispute arises from Defendant's reimbursement of out-of-network surgical services provided to a non-party patient diagnosed with breast cancer and required surgery.  The patient, E.S., was the beneficiary of a health insurance plan (the "Benefit Plan") administered by Defendant.  ("Compl." ECF No. 1 ¶ 9.)  However, E.S. underwent surgery from Dr. Alexis

1

Parcells, who is a member of Plaintiff, an out-of-network medical provider that specializes in plastic and reconstructive surgery. (*Id.* ¶¶ 5, 7, 10.)  Because Plaintiff and Dr. Parcells are not in Defendant's network, they do not have network contracts that would determine payment for the treatment of Defendant's beneficiaries, including E.S.  (*Id.* ¶¶ 10–11.)  As out-of-network providers, Plaintiff and Dr. Parcells are entitled to set their own fees and bill patients accordingly. (*Id.* ¶ 12.)

As alleged, Plaintiff and Dr. Parcells sought an in-network/gap exception from Defendant so that Dr. Parcells could perform the medical procedures E.S. required.  (*Id.* ¶ 13.)  A gap exception, also referred to as an in-network exception, is a healthcare industry term of art under which an insurance carrier agrees to cover an out-of-network medical treatment as though it were provided in-network, thereby ensuring that the member incurs no greater cost-sharing than if the treatment had been obtained from an in-network provider.  (*Id.* ¶ 14.)  However, a gap exception does not mean that a provider has agreed to accept the same reimbursement rates or policies, nor does it mean that the provider has accepted the rates that in-network providers receive for the same service.  (*Id.* ¶ 15.)  Thus, according to Plaintiff, when a gap exception is authorized, the reimbursement rate for that treatment is either negotiated between the parties or paid as charged by the out-of-network provider.  (*Id.* ¶ 16.)

On August 12, 2021, Plaintiff alleges that it was granted a gap exception by Defendant under authorization number A131326916 (the "Approval Letter").  (*Id.* ¶ 18.)  According to Plaintiff, the Approval Letter did not place limitations or qualifications on Plaintiff's reimbursement rate. (*Id.* ¶¶ 18–19.)  Rather, Plaintiff contends that the Approval Letter obligated Defendant to reimburse Plaintiff at the billed charges or, alternatively, at an agreed upon negotiated rate independent of the Benefit Plan or its terms.  (*Id.* ¶ 21.)

In reliance on the Approval Letter, Dr. Parcells performed two surgeries on E.S. (*Id.* ¶ 22.) The first surgery took place on August 12, 2021. (*Id.* ¶ 7.) During that procedure, Dr. Parcells performed a bilateral mastectomy and placed tissue expanders in E.S. (*Id.*) The second surgery occurred on November 16, 2021, during which Dr. Parcells performed another highly invasive and complex procedure involving bilateral second-stage reconstruction, removal of tissue expanders, total capsulectomies, replacement of silicone gel implants, mastectomies, mastopexies, placement of acellular dermal matrix, and an intercostal block. (*Id.* ¶ 8.) Following these surgeries, Plaintiff submitted a health insurance claim form to Defendant seeking total reimbursement in the amount of $127,800. (*Id.* ¶ 23.) Defendant, however, only paid $5,048.86. (*Id.* ¶ 24.) Plaintiff thereafter appealed the reimbursement determination, but those appeals were unsuccessful. (*Id.* ¶¶ 25–26.)

According to Plaintiff, Defendant was obligated to process Plaintiff's claims in a manner that would not expose E.S. to any greater cost-sharing than if the treatment had been performed by in-network providers. (*Id.* ¶ 29.) Plaintiff therefore alleges that Defendant was required to either pay the billed charges or negotiate mutually agreeable rates with Plaintiff. (*Id.* ¶ 31.) Instead, Plaintiff alleges that Defendant unilaterally applied a payment amount of $5,048.86 for both procedures. (*Id.* ¶ 32.) Plaintiff further alleges that Defendant represented in an explanation of benefits that E.S. was not responsible for any unpaid portion of the charges beyond her deductible, copay, and coinsurance. (*Id.* ¶ 33.) According to Plaintiff, these representations falsely conveyed that Defendant had complied with the gap exception by indicating that E.S.'s liability was $0.00. (*Id.*) Plaintiff now asserts a single claim against Defendant for promissory estoppel.

## II.    **SUBJECT MATTER JURISDICTION**

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

### III.   LEGAL STANDARD

A district court may grant a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  When considering a motion under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (citation modified).

Thus, to survive a motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)).  The court may, however, ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed me.  *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

Generally, the court may not "consider matters extraneous to the pleadings" when considering a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted).  However, the court may consider (1) exhibits attached to the complaint, (2) matters of public record, and all "document[s] integral to or explicitly relied upon in the complaint" without converting the motion to dismiss into one for summary judgment.

4

*Angstadt v. Midd–West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004) (quoting *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002)).

## IV.    **DISCUSSION**

Defendant argues that the Complaint should be dismissed because (1) Plaintiff is not a proper party to the purported promise; (2) Plaintiff's claim is preempted by § 514(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"); and (3) Plaintiff's claim fails to state a claim upon which relief can be granted.  Because the Court finds that Plaintiff's claim is preempted by § 514(a), the Court does not reach Defendant's other arguments.

"ERISA is a 'comprehensive legislative scheme' designed to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries." *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 449 (3d Cir. 2018) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004)).  In designing this scheme, Congress enacted § 514(a), which is a broad express preemption provision that "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 226 (3d Cir. 2020) (quoting 29 U.S.C. § 1144(a)).  Congress used an expansive definition of "State law," defining it as "all laws, decisions, rules, regulations, or other State action having the effect of law." 29 U.S.C. § 1144(c)(1).  This includes not only state statutes, but also common law causes of action.  *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990).

A state law "relates to" an employee benefit plan "if it has a connection with or reference to such a plan." *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 294 (2014) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983)).  In determining whether a claim makes an impermissible "reference to" a plan, the Third Circuit has distilled two overlapping categories of

5

claims from Supreme Court precedent: "(a) claims predicated on the plan or plan administration, e.g., claims for benefits due under a plan, or where the plan is a critical factor in establishing liability, and (b) claims that involve construction of the plan, or require interpreting the plan's terms." *Plastic Surgery Ctr., P.A.*, 967 F.3d at 230 (citation modified). Whether a state law has a "connection with" a plan depends on whether the claims: "(a) directly affect the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries; (b) interfere with plan administration; or (c) undercut ERISA's stated purpose." *Id.* at 235 (citation modified).

In *Plastic Surgery Center*, the plaintiff, a medical provider, brought state common law claims against the insurance provider arguing that it entered into an oral agreement to provide plastic surgery services not covered by the terms of the insureds' plans. 967 F.3d at 224. Specifically, two patients sought medical procedures for breast reconstruction surgery and facial reanimation surgery, respectively, from a practice specializing in plastic and reconstructive surgery that were not available in-network. *Id.* at 223. As a result of the lack of coverage, the provider contacted the insurer to confirm that it would be compensated before providing care. *Id.* at 224. In the first patient's case, the insurer agreed to pay a "reasonable amount" over the telephone. *Id.* And in the second patient's case, the insurer verbally confirmed that the provider would be paid at the "highest in-network level." *Id.* Despite these agreements, the insurer refused to compensate the provider at the agreed upon amounts after the services were provided. *Id.*

The Third Circuit then held that the plaintiff's breach of contract and promissory estoppel claims did not "relate to" an ERISA plan, because the parties' "oral agreements" gave rise to a freestanding contract which defined the scope of the medical procedures the plaintiff agreed to perform. *Id.* at 231–32. The Third Circuit framed its inquiry as one in which it must determine

whether the parties agreed "(i) that [the insurer] would provide payment for all services necessary to perform the respective surgeries, leaving only the *amount* of payment pegged to the terms of the plan; or (ii) that the scope of coverage, as well as payment, would be limited to the terms of the plans—leaving open the possibility that some services would not be compensated at all." *Id.* In finding that the former situation was applicable, the Third Circuit determined that the plaintiff agreed to perform the surgeries in exchange for payment from the insurer of a "reasonable amount" under the first insured's benefit plan and at the "highest in-network level" under the second insured's benefit plan for all of the component services (not merely those services covered under the terms of the plans). *Id.* Accordingly, the Third Circuit determined that it was "[the insurer's] oral offers or oral promises (as the case may be) rather than the terms of the plan that define the scope of [the insurer's] duty." *Id.* at 233. Moreover, the Third Circuit stated that simply because the claim arose against the backdrop of an ERISA plan did not mean that it made a "reference to" that plan. *Id.* at 235. Because the claims did not seek benefits due under the plans or "require more than a cursory examination of the plans," they did not make an impermissible "reference to" the plans. *Id.*

Other courts within this District have distinguished *Plastic Surgery Center* and concluded that a plaintiff's state law claims were preempted under § 514(a). For example, in *Advanced Orthopedics and Sports Medicine Institute, P.C. v. Oxford Health Insurance, Inc.*, the plaintiff, an out-of-network provider, contacted the insurer and obtained a preauthorization letter prior to performing a surgery. Civ. No. 2022 WL 1718052, at *1–2 (D.N.J. May 27, 2022). After performing the surgery, the plaintiff billed the insurer, who refused to pay the total balance. *Id.* at *2. The plaintiff subsequently brought state common law causes action, including claims for promissory estoppel and breach of implied contract. *Id.*

7

The court then found that the preauthorization letter was not a "freestanding agreement" reached between the parties because the letter stated that any payment was based on the "terms, conditions and limitations of the Member's health benefits plan." *Id.* at *8. Accordingly, the court held that the state claims "relate to" an ERISA plan "because the pre-authorization letter indicates that the insurer looks to the ERISA plan to determine both the scope of any services eligible for reimbursement, and the amount of any subsequent payment." *Id.*

Similarly, in *Princeton Neurological Surgery, P.C. v. Aetna*, a district court examined a preauthorization letter and concluded that it did not create an independent agreement because it was issued pursuant to the benefit plan and referenced the plan throughout the body of letter. Civ. No. 22-1414, 2023 WL 2307425, at *6 (D.N.J. Feb. 28, 2023). Specifically, the preauthorization letter stated that the insured was approved for two services that were to be performed by the plaintiff. *See id.* However, the preauthorization letter conditioned authorization to certain circumstances related to the insured's benefit plan:

> • This authorization approval is NOT effective and benefits may not be paid if: . . . the member is no longer covered at the time the approved treatment/services are actually performed . . . the member has exceeded any applicable benefit maximums under the plan . . . the member's plan no longer includes coverage for the approved treatment/services.
>
> • Members should refer to their plan administrator to determine exclusions and limitations under the plan.
>
> • Contact your plan administrator for information on your out of network benefits
>
> • Reimbursement will be based on standard coding and bundling logic and any mutually agreed upon contracted or negotiate[d] rates, subject to any and all copays or coinsurance requirements.

*Id.* (citation modified). Based on these statements, the court concluded that the preauthorization letter did not create an independent obligation, but instead authorized approval pursuant to the

8

insured's benefit plan. *Id.* at *7. Moreover, because "the scope of coverage, as well as payment," depended on various circumstances relating to the benefit plan, the plaintiff's claims to enforce the preauthorization letter "relate to" to the benefit plan. *Id.*

Like the claims in *Princeton Neurological Center* and *Advanced Orthopedics*, Plaintiff's claim for promissory estoppel "relates to" E.S.'s benefit plan and is therefore preempted under § 514(a). Here, the Approval Letter states that E.S.'s "treatment is medically necessary and is covered by [her] plan," and identifies three services that are eligible for benefits. (Ex. A at 1.) However, the Approval Letter explicitly states that "this approval does not guarantee that the plan will pay for services," and could depend "on other plan rules, including coordination of benefits." (*Id.* at 2.) Moreover, the Approval Letter provides that the "plan may have limits on how many visits or services the plan covers" and advises E.S. to "check [her] plan documents." (*Id.* at 1.) Finally, the Approval Letter states that "payment is based on . . . [t]he services [E.S.'s] health plan covers[,] [t]he guidelines and policies in place when [E.S.] received [her] services, [and] [m]ember eligibility at the time of service." (*Id.* at 3.)

When reading the Approval Letter in its entirety, it becomes clear that it does not create a separate agreement because the "scope of coverage, as well as payment, would be limited to the terms of the plan[]—leaving open the possibility that some services would not be compensated at all." *Princeton Neurological Surgery*, 2023 WL 2307425, at *7 (quoting *Plastic Surgery Ctr.*, 967 F.3d at 231); *see also Small v. Anthem Blue Cross Blue Shield*, Civ. No. 24-9680, 2025 WL 2778490, at *4 (D.N.J. Sept. 30, 2025) (finding that a gap-exception did not create an independent agreement because it merely brought an out-of-network provider in-network and was therefore "related to" an employee benefit plan); *Peer Group for Plastic Surgery, PA v. United Healthcare Services, Inc.*, Civ. No. 23-2073, 2024 WL 1328134, at *6 (D.N.J. March 28, 2024) (finding

9

ERISA preemption where a gap exception letter stated an out-of-network provider would be covered in-network, making it impossible to determine the merits of the plaintiff's claims without examining the ERISA-governed plan).

In its Opposition Brief, Plaintiff relies on the Third Circuit's decision in *Plastic Surgery Center* to argue that its claim lacks a "connection with" the Benefit Plan because Plaintiff is a third-party provider outside ERISA's intended scope. (Opp. at 6.) But, as explained above, a state-law claim may nevertheless "relate to" an ERISA-governed plan if it either has a "connection with" or makes an impermissible "reference to" the plan. *See Plastic Surgery Ctr., P.A.*, 967 F.3d at 226. Because the Court has already determined that Plaintiff's promissory estoppel claim falls within the latter category, Plaintiff's argument regarding the absence of a "connection with" the Benefit Plan does not alter that conclusion.

Plaintiff further contends that the Approval Letter created a legal obligation independent of E.S.'s Benefit Plan because it only requires a "cursory review" of her plan to determine the negotiated rate, and is therefore not the "exacting, tedious, or duplicative inquiry" that § 514(a) forbids. (Opp. at 7–8). Plaintiff further contends that the Approval Letter's references to the Benefit Plan are "of no moment" because the allegations in the Complaint make clear that the gap exception is independent of the Benefit Plan. (*Id.* at 8–9.) According to Plaintiff, the terms of the gap exception, *i.e.,* payment of billed charges or a negotiated rate, can be readily determined without reference to the Benefit Plan's terms. (*Id.* at 9.)

Plaintiff's arguments are without merit and are contradicted by the Approval Letter attached to the Complaint. *See Gupta v. Wipro Ltd.*, 749 F. App'x 94, 97 (3d Cir. 2018) ("Although we generally 'must accept as true the complaint's factual allegations, this requirement does not apply when the allegations are contradicted by the exhibits attached to the complaint or matters

10

subject to judicial notice.'").  As discussed above, the Approval Letter repeatedly directs E.S. to consult her "plan documents," expressly stating that coverage remained subject to the Benefit Plan's terms and limitations.  (Ex. A at 1.)  Moreover, contrary to Plaintiff's assertion that Defendant was "obligated" to pay for the surgeries, the Approval Letter expressly disclaims any guarantee of payment, stating that "approval does not guarantee that the plan will pay for the service," including where "payment of covered services depends on other plan rules, including coordination of benefits."  (*Id.* at 2.)  The Approval Letter further explains that "payment is based on" both "the services your health plan covers" and "the guidelines and policies in place when you received your services."  (*Id.* at 3.)  Accordingly, Plaintiff's assertion that the Approval Letter created an obligation independent of the Benefit Plan is belied by the document itself, which expressly conditions both coverage and payment on the Benefit Plan's terms and limitations. Plaintiff's promissory estoppel claim therefore "relates to" the Benefit Plan and is preempted under § 514(a).[1]

## V.    **CONCLUSION**

For the reasons stated above, the Court will **GRANT** Defendant's Motion to Dismiss. Plaintiff's claim for promissory estoppel will be **DISMISSED WITH PREJUDICE**.

Despite this ruling, the Court notes that it is sensitive to the important issues raised in the Complaint.  The patient in this case required medical treatment, and Plaintiff, in turn, performed the necessary operations.  The Court is nonetheless obligated to follow the law and the preemption

---

[1] Plaintiff's reliance on *Gotham City Orthopedics, LLC v. United Healthcare Ins. Co.* and *Premier Orthopaedic Assocs. Of S. NJ, LLC v. Anthem Blue Cross Blue Shield* is misplaced.  In *Gotham City*, the court determined that the plaintiff's claims "would not require an intricate look" at the benefit plans because the preauthorization "did not rely in any depth on the provisions of the plans."  Civ. No. 21-11313, 2022 WL 111061, at *3 (D.N.J. Jan. 12, 2022).  And in *Premier Orthopaedic*, the court did not have a copy of the preauthorization letter to review, and the allegations in the complaint stated that the state law claims were based on a "prior course of conduct" between the provider and the insurer.  675 F. Supp. 3d 487, 492 (D.N.J. May 30, 2023).  Moreover, nothing in the complaint directed the court "to consider the patient's healthcare benefit plan."  *Id.*at 493.  In contrast, Plaintiff attached the Approval Letter to the Complaint, and that letter explicitly states that scope of coverage and payment are dependent on E.S.'s Benefit Plan.

provision found in § 514(a).  Plaintiff will be granted leave to file an Amended Complaint, limited to asserting a claim for unpaid benefits under ERISA § 502, within thirty (30) days from the date of the accompanying Order.  An appropriate Order will follow.

Date: July 22, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**